UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TWENTY THREE THOUSAND THREE
HUNDRED AND FORTY DOLLARS ($23,340.00)
IN UNITED STATES CURRENCY,

        Defendant.
_____/

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The plaintiff, the United States of America, hereby files this Verified Complaint for Forfeiture *In Rem* and in support states the following:

1. This is a civil action for Forfeiture *In Rem* of Twenty Three Thousand Three Hundred and Forty Dollars ($23,340.00) in United States Currency (hereinafter referred to as the "defendant currency").

2. Subject matter jurisdiction is vested in this Court pursuant to Title 28, United States Code, Sections 1345, 1355(a), and 2461.

3. This Court has in rem jurisdiction over this matter pursuant to Title 28, United States Code, Sections 1355(b) and (d), and 2461(b).

4. The Court has venue pursuant to Title 28, United States Code, Sections 1355(b) and 1395, in that the acts giving rise to the forfeiture occurred within the Southern District of

Florida and the action accrued in the Southern District of Florida. The defendant currency was seized in Broward County, Florida, by agents of the Drug Enforcement Administration. The defendant currency was deposited into the U.S. Marshals Service seized asset account in the Southern District of Florida.

5. The United States seeks forfeiture of the defendant property pursuant to Title 21, United States Code, Section 881(a)(6) arising from violations of Title 21, United States Code, Section 801, et seq., or proceeds traceable thereto, and/or pursuant to Title 18, United States Code, Section 981(a)(1)(A) as property involved in a transaction in violation of Title 18, United States Code, Section 1956, or as property traceable thereto.

### FACTS

6. On February 9, 2012, the Fort Lauderdale Airport Interdiction Task Force in which the Drug Enforcement Administration (DEA) is a member, received a travel alert that US Airways passenger Calvin Caldwell aboard Flight 989, from Columbus, Ohio, was traveling to Fort Lauderdale Airport on that date.

7. Broward Sheriff Office (BSO) Detectives Phil MacDonald, Thomas O'Keefe and Jeff Poole observed Calvin Caldwell as he exited the plane at gate E-5 traveling with one carry-on suitcase leaving the Fort Lauderdale Airport.

8. BSO Detectives Phil MacDonald identified himself as a police officer and engaged in a consensual conversation with Caldwell, who informed law enforcement that he had flown from Columbus, Ohio, to Fort Lauderdale, Florida, to purchase a vehicle.

9. Calvin Caldwell appeared to be very nervous and visibly shaking; had no information on what type of vehicle that he came to purchase; and did not know exactly how much US currency he possession; stating only "about $20,000."

10. Calvin Caldwell reported to law enforcement that he earned the money from his car detailing business in Columbus, Ohio, but could not provide any bank receipts or any type of verification for the US currency.

11. BSO Detective MacDonald was given consent to examine the suitcase by Calvin Caldwell and he agreed to accompany law enforcement to the Terminal Interdiction Office to conduct the search.

12. Inside the carry-on suitcase BSO Detective MacDonald discovered $23,340.00 in US currency wrapped in eleven (11) clear plastic zip lock baggies, seven (7) empty prescription pill bottles for Oxycodone and Cyclobenzaprine, with RX record print outs from a number of different pharmacies in south Florida.

13. Calvin Caldwell was in possession of US Airways ticket record showing that he had left Fort Lauderdale, Florida, on February 7, 2012, en route to Columbus, Ohio, and returned to Fort Lauderdale, Florida, on February 9, 2012, but Caldwell could not explain why the 2 day turn around.

14. Calvin Caldwell was also in possession of a Florida Drivers License issued on August 26, 2010 with the address of 1174 Arthur Street, Hollywood, Florida, notwithstanding Caldwell's claim to live in Columbus, Ohio, operating his car detailing business.

15.     Further Calvin Caldwell was in possession of a notarized letter stating that "My uncle Calvin Caldwell resides with me in Dade County at 31111 NW 69th Street in Miami" from a Nicole Gordon dated July 13, 2011.

16.     The law enforcement officers are aware that in the street drug trade it is common practice for persons from other states to have in their possession different types of Florida proof of residency for the sole purpose of buying prescription medications.

17.     The law enforcement officers recognized this style of bundling large quantities of currency as consistent with the manner that drug traffickers and/or money launderers package large amounts of currency. The defendant currency totaling $23,340.00 was comprised of:

        872     $20 denominations totaling $17,440.00

        118     $50 denominations totaling $5,900.00.

18.     BSO Detective Dustin Thompson conducted a search of the US currency recovered by deploying trained narcotics canine "Boomer" who positively alerted to the currency for the odor of a controlled substance.

19.     On February 27, 1989, <u>State of Ohio v. Calvin C. Caldwell</u>, Case No. 88-CR-095, was convicted of aggravated trafficking in drugs in Crawford County, Ohio and sentenced to a term of incarceration.

20.     On June 30, 1995, <u>State of Ohio v. Calvin C. Caldwell,</u> Case No. 94-CR-314H and 95-CR-65H, was convicted of possession of drugs in Richland County, Ohio and sentenced to a term of incarceration.

21. On April 11, 2002, State of Ohio v. Calvin Caldwell, Jr., Case No. 01-CR-594H, was convicted of possession of drugs in Richland County, Ohio and sentenced to a term of incarceration.

22. On September 14, 2010, State of Ohio v. Calvin C. Caldwell, 2010-CRA-02906, was convicted of possession with intent to distribute drugs in Mansfield, Ohio and sentenced to a term of incarceration.

23. On January 26, 2011, State of Ohio v. Calvin Caldwell, Jr., Case No. 10-CR-535H, was convicted of possession of crack cocaine in Richland County, Ohio and sentenced to a term of incarceration.

24. Based on the foregoing, the defendant currency has become and is forfeit to the United States of America pursuant to the provisions of 21 U.S.C. §881(a)(6)and 18 U.S.C. § 981(a)(1)(A).

## FIRST CLAIM FOR FORFEITURE
### (NARCOTICS PROCEEDS)

25. Plaintiff re-alleges paragraphs 6 through 24 above as if fully set forth herein.

26. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance...in violation of [Subchapter I of Title 21], all proceeds traceable to such an exchange, and all moneys, negotiable instruments and securities used or intended to be used to facilitate any violation of [Subchapter I of Title 21]...

27. The defendant cash was derived from proceeds traceable to exchange of controlled substances in violation of 21 U.S.C. §841(a)(1) and §846.

28. Based on the foregoing, the defendant currency constitutes moneys furnished or intended to be furnished in exchange for controlled substances in violation of 21 U.S.C. § 801, et seq., or proceeds traceable thereto, and is thereby forfeit to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR FORFEITURE
### (MONEY LAUNDERING)

29. Plaintiff re-alleges paragraphs 6 through 24 above as if fully set forth herein.

30. 18 U.S.C. § 981(a)(1)(A), subjects to forfeiture "any property, real or personal, involved in a transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property."

31. 18 U.S.C. § 1956(a), commonly known as the money laundering statute, imposes a criminal penalty upon any person who -

> (a)(1) ... knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -
> (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
> ...
>
> (B) knowing that the transaction is designed in whole or in part -
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity... shall be sentenced to a fine of not more than $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

32. A "financial transaction" is defined in 18 U.S.C. § 1956(c)(4) to mean a "transaction" which in any way or degree affects interstate or foreign commerce (i) involving the

movement of funds by wire or other means or (ii) involving one or more "monetary instruments."

33.   The term "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any act or activity constituting an offense under 18 U.S.C. § 1961(1). Section 1961(1)(D) lists as an offense "the felonious manufacture, importation, receiving, concealment, buying, selling or otherwise dealing in controlled substance... punishable under any law of the United States."

34.   The term "monetary instrument" is defined in 18 U.S.C. § 1956(c)(5) as "coin or currency of the United States or of any other country, travelers' checks, personal checks, bank checks, and money orders."

35.   Based on the foregoing, the defendant currency constitutes personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or is traceable to such property, and is thereby forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

By reason of the foregoing, the defendant is forfeit to the United States of America, pursuant to Title 21, United States Code, Section 881(a)(6), as proceeds or traceable to a drug transaction; and the provisions of Title 18, United States Code, Section 981(a)(1)(A), as property involved in a money laundering transaction or traceable thereto.

WHEREFORE, Plaintiff, United States of America requests, that any and all persons having any claim to the defendant be directed to file and serve their verified claims and answers as required by Rule G(5), of the Supplemental Rules for Certain Admiralty or Maritime and

Asset Forfeiture Claims, or suffer default thereof, and further requests that the Court declare the defendant property condemned and forfeit to the United States of America, and that the Plaintiff have such other and further relief as may just and proper.

                Respectively submitted,

                WIFREDO A. FERRER
                UNITED STATES ATTORNEY

        BY: s/Roger W. Powell
            ROGER W. POWELL
            ASSISTANT U.S. ATTORNEY
            Roger.Powell@usdoj.gov
            500 E. Broward Blvd., Suite 700
            Ft. Lauderdale, Florida 33394
            Tel: (954) 356-7255 ext. 3592
            Fax: (954) 356-7180
            Fla Bar No. 341411

## **VERIFICATION**

I, Patrick L. Gittelsohn, Special Agent, United States Drug Enforcement Administration hereby declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture in Rem is based upon information known to me, and that the facts alleged therein are true and correct to the best of my knowledge and belief.

    EXECUTED, on this ___1___ day of August 2012.

                PATRICK L. GITTELSOHN

                SPECIAL AGENT
                DRUG ENFORCEMENT ADMINISTRATION